■ ELLEN SWAIN, as Executrix of ARTHUR BROWN, Deceased, Respondent, v DELAINE M. BROWN, Appellant. [24 NYS3d 598]—

Order, Supreme Court, New York County (Joan A. Madden, J.), entered August 1, 2014, which, to the extent appealed from as limited by the briefs, denied defendant's motion for summary judgment dismissing plaintiff's causes of action for replevin, conversion, and unjust enrichment, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

Defendant, Delaine Brown, is the ex-wife of Arthur Brown, now deceased. By judgment entered June 7, 1988, which set out the details of the distribution of their property, Arthur and Delaine were each to retain his or her personal property, with articles designated as joint property to be sold, or, in the alternative, at Delaine's option, retained by the party exercising dominion and control as a distribution in kind. By order entered March 23, 1989, this Court modified the judgment to the extent of "awarding [Arthur] ownership of those items of personalty [Delaine] admitted in the record were acquired from [his] father's apartment" (*Brown v Brown*, 148 AD2d 377, 378 [1st Dept 1989]).

Thereafter, Arthur moved for an order seeking distribution and transfer of certain personal property. Supreme Court denied the motion. On March 18, 1993, this Court reversed to the extent of awarding Arthur seven Max Weber artworks and 32 Indian miniatures stored in a warehouse (the Artwork), and directing that the remaining items in the warehouse be distributed in kind, by Delaine and Arthur each choosing works in series, upon payment by Arthur of his share of the monies owed for storage (see *Brown v Brown*, 191 AD2d 301, 301 [1st Dept 1993], *lv dismissed* 82 NY2d 748 [1993]).

On December 2, 1993, Arthur's attorney demanded that the Artwork be turned over. The complaint alleges that Delaine initially refused but that she later entered into an agreement with Arthur to do so, evidenced by letters from Delaine's at-

torney to Arthur's attorney dated December 7, 1993 and January 27, 1995.

The December 7, 1993 letter advised Arthur's counsel that "[t]he Webers and Indian miniatures previously were set aside for [Arthur] and on presentation of the letter sent to you, he is at liberty to take possession without prejudice to any rights or claims that he may have." Although no conditions were imposed, there is no indication that Arthur ever attempted to pick up the Artwork. The January 27, 1995 letter enclosed an inventory of the warehouse divided into two categories, property to be delivered to Delaine and property to be delivered to Arthur, the latter of which included the Artwork. However, unlike the December 7, 1993 letter, it did not offer to return the Artwork to Arthur unconditionally. Rather, the letter stated as follows:

"It is proposed that you and I meet (without our clients) . . . and[,] . . . in turn, alternatively designate the item[s] of joint property desired by our client . . .

"Prior to our meeting, Arthur Brown will execute a general release to Delaine Brown, and Delaine Brown will execute a general release to Arthur Brown which shall be delivered by each client to their respective attorney. At the time of certification of the inventory lists by you and me, each of us will deliver our client's general release to the other.

"Thereafter, Delaine Brown will effectuate segregation of the respective party's property at the New Yorker Warehouse for each party to remove within a reasonable time to be agreed on in writing in advance of our meeting . . .

"Will you please advise."

The record does not contain any response to the proposal from Arthur's attorney. Nor is there any indication that Arthur made any attempt over the next 16 years to take possession of the Artwork or that he contributed to payment of the warehouse fees.

After Arthur died in 2011, plaintiff, his executrix, sent a letter to Delaine, dated June 29, 2012, demanding the immediate return of the Artwork. When Delaine did not respond, plaintiff commenced this action on November 19, 2012 for breach of agreement, civil contempt, replevin, conversion, fraud, and unjust enrichment. Delaine moved to dismiss the complaint based on CPLR 3211 (a) (1), (5) and (7). Supreme Court granted Delaine's motion to the extent of dismissing the causes of action for breach of contract, civil contempt, and fraud. The remaining causes of actions were sustained.

Under CPLR 214 (3), the statutory period of limitations for conversion and replevin claims is three years from the date of accrual. The date of accrual depends on whether the current possessor is a good faith purchaser or bad faith possessor. An action against a good faith purchaser accrues once the true owner makes a demand and is refused (*see Solomon R. Guggenheim Found. v Lubell*, 77 NY2d 311, 317-318 [1991], *affg* 153 AD2d 143 [1st Dept 1990]). This is "because a good-faith purchaser of stolen property commits no wrong, as a matter of substantive law, until he has first been advised of the plaintiff's claim to possession and given an opportunity to return the chattel" (153 AD2d at 147). By contrast, an action against a bad faith possessor begins to run immediately from the time of wrongful possession, and does not require a demand and refusal (*see State of New York v Seventh Regiment Fund*, 98 NY2d 249 [2002]; *Davidson v Fasanella*, 269 AD2d 351 [2d Dept 2000]). Thus, "[w]here replevin is sought against the party who converted the property, the action accrues on the date of conversion" (*Matter of Peters v Sotheby's Inc.*, 34 AD3d 29, 36 [1st Dept 2006], *lv denied* 8 NY3d 809 [2007]).

Here, plaintiff alleges that Delaine is a wrongful possessor of the Artwork by virtue of her retention thereof in defiance of this Court's 1993 order. Accordingly, since Delaine was holding the Artwork in bad faith, the demand and return rule does not apply and the three-year limitations period commenced as of the date of the wrongful taking, which occurred when Delaine retained the Artwork after the issuance of our March 18, 1993 order. Thus, plaintiff's conversion and replevin claims, filed in 2012, are untimely (*see Close-Barzin v Christie's, Inc.*, 51 AD3d 444, 444 [1st Dept 2008] ["Plaintiff's conversion claim is time-barred, since she alleges bad faith and the action was commenced more than three years after the alleged taking of the property occurred"]; *Samuels v Greenberg*, 2015 WL 5657565, *8-11, 2015 US Dist LEXIS 128221, *21-27 [ED NY, Sept. 23 2015, No. 14-CV-04401 (DLI)(VMS)] [the plaintiffs' claims for conversion and replevin accrued, at the latest, on the date a default judgment was entered against defendants in a Rabbinical arbitration]).

Even if the demand and refusal rule applied, the action would still be untimely. A refusal of a demand "need not use the specific word 'refuse' so long as it clearly conveys an intent to interfere with the demander's possession or use of his property" (*Feld v Feld*, 279 AD2d 393, 395 [1st Dept 2001], *lv denied* 96 NY2d 717 [2001]). Here, although the December 7, 1993 letter unconditionally permitted Arthur to take posses-

sion of the Artwork, he did not avail himself of that offer. Thereafter, in the January 27, 1995 letter, Delaine conditioned the turnover of Artwork on payment of storage fees and a release of claims, which constituted a refusal (*id.* ["(t)he father's 1974 letter just as clearly constituted a refusal as it conditioned return of the disputed property on resolution of other disputes, which was inconsistent with (the) plaintiff's claim of ownership"]; *Grosz v Museum of Modern Art*, 772 F Supp 2d 473, 494 [SD NY 2010] ["An aggrieved owner of property cannot delay the accrual of his cause of action for conversion indefinitely by eliciting multiple rejections from the person who is interfering with his right to possession. And once his claim accrues, the clock does not reset to zero every time the parties reopen the subject of who owns the disputed property"]). Thus, even if the demand and refusal rule applies, the statute of limitations accrued no later than 1995 and the conversion and replevin claims, commenced in 2012, remain untimely.

Unjust enrichment occurs when a defendant enjoys a benefit bestowed by the plaintiff without adequately compensating the plaintiff (*see Sergeants Benevolent Assn. Annuity Fund v Renck*, 19 AD3d 107, 111 [1st Dept 2005]). The statute of limitations for unjust enrichment generally accrues upon "the occurrence of the alleged wrongful act giving rise to restitution" (*Kaufman v Cohen*, 307 AD2d 113, 127 [1st Dept 2003]). Here, any alleged "enrichment" took place when Delaine retained possession of the Artworks following our 1993 decision. Accordingly, plaintiff's unjust enrichment claim is also time-barred. Concur—Tom, J.P., Sweeny, Andrias and Gische, JJ. ▮